OSCN Found Document:STATE v. AGUILAR

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE v. AGUILAR
2024 OK CR 18
Case Number: S-2023-575
Decided: 07/18/2024
THE STATE OF OKLAHOMA, Appellant v. AMANDA CAMP AGUILAR, Appellee

Cite as: 2024 OK CR 18, __ __

 

 

O P I N I O N

ROWLAND, PRESIDING JUDGE:

¶1 The State of Oklahoma appeals a pretrial order quashing the Information against Appellee Aguilar for insufficient evidence. The State charged Aguilar by Information in the District Court of Kay County, Case No. CF-2020-634, with one count of child neglect in violation of 21 O.S.Supp.2019, § 843.5(C). After being bound over for trial at preliminary hearing, she filed a motion to quash for insufficient evidence pursuant to 22 O.S.2021, § 504.1. The Honorable Lee Turner, District Judge, granted the motion and quashed the Information. The State now appeals, pursuant to 22 O.S.Supp.2022, § 1053(4), and raises the following propositions of error:

I. whether the district court erred in granting Aguilar's motion to quash for insufficient evidence when it found that her use of medical marijuana while pregnant is not illegal under Oklahoma law; and

II. whether the district court erred in finding that the out of state lab report should not have been admitted at preliminary hearing.

¶2 After thorough consideration of the entire record before us on appeal, including the original record, transcripts, exhibits and the parties' briefs, we find that no relief is required under the law and evidence. The district court's order granting Aguilar's motion to quash is affirmed.

I.

¶3 The issue in this appeal is whether an expectant mother who holds a medical marijuana card and uses the drug while pregnant has exposed her unborn child to illegal drugs constituting the crime of child neglect, which in Oklahoma includes "the failure or omission to protect a child from exposure to . . . the use, possession, sale, or manufacture of illegal drugs." 10A O.S.Supp.2019, § 1-1-105(48)(b)(1) (emphasis added). The Information charges Aguilar with a single felony count of child neglect by "exposing J.W.B. to controlled dangerous substances in utero, specifically Marijuana." (Emphasis added). Thus, the charging document accuses Aguilar of a crime which does not exist, i.e., child neglect by exposure to "controlled dangerous substances" as opposed to exposure to "illegal drugs[.]" This is not a matter of semantics, and although this charging error does not determine the outcome of this appeal, the apparent confusion in terminology and definitions which led to that error is central to understanding how to properly resolve this case.

¶4 The terms "controlled dangerous substance" and "illegal drugs" are not synonymous; the former includes hundreds of prescription drugs which, like marijuana, are lawful to possess only with a prescription or other legal authorization. The term "controlled dangerous substance" is defined in 63 O.S.Supp.2019, § 2-101(8) as any drug listed in any of the Schedules I through V of the Uniform Controlled Substances Act. However, neither that Act nor any other provision of Oklahoma law defines the term "illegal drug", so we must ascertain the meaning of that term, and specifically, whether the marijuana use in this case is included within it so as to constitute child neglect.

¶5 In general, drugs in Schedules II through V have potential for abuse, but also some legitimate medical value and can be lawfully prescribed by a practitioner. Those in Schedule I have high potential for abuse but no legitimate medical value, and because of this historically could not be prescribed by a practitioner. This clear distinction between Schedule I versus all other Schedules was blurred when Oklahoma enacted its medical marijuana laws, leaving marijuana in Schedule I but creating a licensing procedure authorizing its lawful possession and use. Thus, while every other drug listed in Schedule I is likely an "illegal drug" as that term is used in the child neglect statute, marijuana may or may not be, depending upon whether the particular user has a medical marijuana card. It is undisputed that Aguilar had one.

¶6 We find that the most logical reading of 10A O.S.Supp.2019, § 1-1-105(48)(b)(1) is that "illegal drugs" means those drugs whose possession or use violated the law at the time of that possession or use. Hence, an expectant mother who exposes her unborn child to illegal methamphetamine could be convicted of child neglect. See State v. Green, 2020 OK CR 18, 474 P.3d 886. Conversely, under that definition, an expectant mother's licensed possession and use of medical marijuana would not trigger an automatic finding of neglect for failure to protect her unborn child from exposure to illegal drugs because as to her, marijuana is not an illegal drug.

¶7 Judge Lumpkin's dissent points out that Aguilar's unborn child did not have a medical marijuana license and thus it became an illegal drug as soon as it crossed the placental barrier from the mother. This attempt to get to a desirable result in this case proves too much, because every drug in Schedules II through V, lawfully prescribed to an expectant mother, would subject her to prosecution for child neglect as soon as a molecule of such drug entered the body of her unborn child. All of these drugs are illegal to possess or use without a prescription. Like it or not, in Oklahoma, marijuana, like all of these other controlled substances, may now be either a legal or an illegal drug, depending upon whether the person has legal authorization to possess and use it. His dissent terms today's ruling "devoid of common sense" but he would craft a legal rule which turns on an unborn fetus not having a medical marijuana card, and which makes it unlawful for any expectant mother to ever be prescribed any controlled dangerous substance by any doctor. While we understand his obvious desire to discourage marijuana use by pregnant women, judicial restraint requires that we defer to the Legislature to address the problem. "[I]t is not our place to interpret a statute to address a matter the Legislature chose not to address, even if we think that interpretation might produce a reasonable result. We will not enlarge the meaning of words included in a statute to create a crime not defined by that statute." State v. Young, 1999 OK CR 14, ¶ 27, 989 P.2d 949, 955.

¶8 In the other dissent, Judge Lewis opines that neither the voters nor the legislature intended to legalize prenatal exposure to marijuana when they passed the medical marijuana laws. He is very likely correct, and we certainly do not condone marijuana use by an expectant mother. But, as explained above, when Oklahoma's laws were changed to exempt this drug from the always-illegal category of Schedule I, it became a legal drug for certain persons including Aguilar. For us to find that Aguilar's marijuana use, fully authorized by her medical marijuana card, became illegal due to her pregnancy, would require us to rewrite the statutes in a way we simply do not think is appropriate for courts to do. We urge the Legislature to consider an addition to the law making clear when, if ever, the licensed use of marijuana may constitute child neglect under 10A O.S.Supp.2019, § 1-1-105(48)(b)(1). Accordingly, Proposition I is denied.

II.

¶9 Because we find that Judge Turner was correct in holding that Aguilar's conduct did not violate 10A O.S.Supp.2019, § 1-1-105(48)(b)(1), Proposition II is moot.

DECISION

¶10 The district court's order granting the motion to quash for insufficient evidence after preliminary hearing is AFFIRMED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2024), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF KAY COUNTY
THE HONORABLE LEE TURNER, DISTRICT JUDGE

 
 
 
 APPEARANCES BELOW

 THOMAS GRIESEDIECK
 ATTORNEY AT LAW
 P.O. BOX 934
 OKLAHOMA CITY, OK 73101
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 BRIAN T. HERMANSON
 DISTRICT ATTORNEY
 FERA TERRELL
 ASST. DISTRICT ATTORNEY
 801 W. SOUTH ST.
 NEWKIRK, OK 74647
 COUNSEL FOR APPELLANT
 
 
 
 
 BRIAN T. HERMANSON
 DISTRICT ATTORNEY
 KAY COUNTY
 801 W. SOUTH ST.
 NEWKIRK, OK 74647
 COUNSEL FOR THE STATE
 
 
 MARYANN GROVER
 APPELLATE DEFENSE COUNSEL
 11 N. PETERS AVE.,
 SUITE 100
 NORMAN, OK 73069
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, P.J.
MUSSEMAN, V.P.J.: Concur
LUMPKIN, J.: Dissent
LEWIS, J.: Dissent
HUDSON, J.: Specially Concur

 

 

LUMPKIN, JUDGE: DISSENTING

¶1 I dissent to the resolution in this case. This is an appeal of a District Court ruling on a motion to quash. "The standard of review to be used by the reviewing District Court Judge in a State appeal from an adverse ruling of the preliminary hearing magistrate is 'whether the evidence, taken in the light most favorable to the state, is sufficient to find that a felony crime has been committed and that the defendant probably committed said crime.'" State v. Bradley, 2018 OK CR 34, ¶ 12, 434 P.3d 5, 9 (quoting 22 O.S.2011, § 1089.5). See also State v. Yarbrough, S-2019-947, November 12, 2020, unpublished (magistrate bound over Appellee for trial on child neglect charges; she filed motion to quash, alleging insufficient evidence and district court granted motion. This Court restated and used the above standard of review from Bradley in reversing the case). The District Court must also consider the presumption that the State will strengthen its case at trial in reaching its decision on a motion to quash for insufficient evidence. Kennedy v. State, 1992 OK CR 67, ¶ 9, 839 P.2d 667, 670. Absent a showing that the magistrate abused his or her discretion, the District Court must affirm the magistrate's ruling. Bradley, 2018 OK CR 34, ¶ 12, 434 P.3d at 10. An abuse of discretion is a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented or, stated otherwise, any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170 (internal citation and quotation marks omitted).

¶2 The Information in this case charged Appellee with the crime of child neglect under 21 O.S.Supp.2019, § 843.5(C) by exposing her child in utero to "controlled dangerous substances", specifically marijuana. The child neglect statute criminalizes exposure of a child to "illegal drugs", but that term is not defined in the statute. See 10A O.S.Supp.2019, § 1-1-105(48)(b)(1). In 63 O.S.Supp.2019, § 2-101(8), "controlled dangerous substances" is defined as any drug listed in any of the Schedules I-V of the Uniform Controlled Substances Act.[1]

¶3 At preliminary hearing, the state presented evidence sufficient to bind Appellee over on the charged crime. Appellee's DHS worker testified Appellee admitted to her that she used marijuana during her pregnancy. The State also admitted the lab report, which showed the baby's meconium tested positive for the presence of marijuana after birth, as part of the baby's medical records.

¶4 The District Court granted Appellee's motion to quash based upon its findings that marijuana was not an illegal drug for Appellee (she had a medical marijuana license) and that the lab report was improperly admitted pursuant to 22 O.S.2021, § 751(A)(3), a statute which authorizes admission of certain self-authenticated reports without the necessity of calling a sponsoring witness. This was an abuse of discretion.

¶5 The opinion finds drugs listed in Schedule I "have high potential for abuse but no legitimate medical value" and could not be prescribed by a medical practitioner. On the other hand, drugs listed in Schedules II-V, while having the potential for abuse, also have certain legitimate medical value and can be lawfully prescribed by a medical practitioner. The problem is that despite the legalization of medical marijuana, marijuana is still listed as a Schedule I drug. Its use may or may not be illegal depending upon whether the user has a medical marijuana card. Appellee has such a card.

¶6 The opinion determines that the term, "illegal drugs", as used in the child neglect statute means those whose possession or use violated the law at the time of the possession or use, such as methamphetamine. Under that definition, the opinion finds Appellee's licensed possession and use of medical marijuana would not lead to a finding of neglect for failure to protect her unborn baby from exposure to possession or use of illegal drugs because as to her, marijuana is not an illegal drug. Thus, Appellee's use of marijuana did not become illegal due to her pregnancy. This analysis is devoid of common sense as the drug is still an illegal and unlawful drug. Only Appellee has a permit to use it, not her baby.

¶7 This finding strains a gnat's hair to disregard the status of the unborn baby. Our statutes provide penalties for actions adversely affecting unborn children. For example, our homicide statutes provide that one who kills a pregnant woman, resulting in not only her death, but also in the death of her unborn child, is subject to a criminal charge for both the woman and her child. See 21 O.S.2021, § 701.7 (first degree murder); 21 O.S.2021, § 701.8 (second degree murder); 21 O.S.2021, § 711 (first degree manslaughter); 21 O.S.2021, § 716 (second degree manslaughter); 21 O.S.2021, § 723 (there is no requirement that a perpetrator have knowledge or should have knowledge that the victim of the underlying offense was pregnant or that he or she intended to cause death or bodily injury to the unborn child).

¶8 In keeping with the above statutes, this Court holds that an unborn baby is a child for purposes of child neglect. The child neglect statutes were undoubtedly enacted to protect children from harm. Marijuana is still an illegal Schedule I drug except for a person who holds a medical marijuana license. In this case, the baby's exposure to Appellee's use and possession of marijuana, a Schedule I drug, is illegal because the baby has no medical marijuana license. It is not the mother's use or possession of marijuana that is criminalized by the child neglect statute, but her exposure of her unborn child to the use or possession of marijuana, an illegal drug for the child.[2] Thus, the District Court abused its discretion in granting the motion to quash based on its finding that marijuana was not an illegal drug for Appellee.

¶9 The opinion argues if we reverse this case, then any Schedule II -V drug (illegal to possess or use without a prescription) prescribed to a pregnant woman subjects her to criminal liability for child neglect once she ingests it. What this argument fails to recognize is that the other Schedule II-V drugs are prescribed by physicians who monitor their patients who are taking the prescribed drugs. With licensed medical marijuana there is zero physician monitoring of the person's use of the drug.

¶10 As for the lab report, Section 751(A)(3) is only a statute authorizing admission of certain self-authenticated reports without the necessity of calling a sponsoring witness. It does not determine what is or is not admissible. The lab report in this case was not testimonial as the lab test was ordered by the hospital (not by the prosecution) as part of its regular procedures in providing medical care. It would properly be admitted if: an appropriate foundation is laid with a witness; or sufficient evidence is presented to qualify it as a business record exception to the hearsay prohibition pursuant to 12 O.S.2021, § 2803(6) (the report was requested by the hospital and included in the baby's medical records from the hospital).[3] There is no constitutional issue regarding the report's admission.

¶11 Under the Bradley standard, the District Court abused its discretion in granting the motion to quash as it failed to consider the balance of evidence that is sufficient for a bind over and it failed to consider that the State would strengthen its case at trial. Having determined the District Court abused its discretion in granting the motion to quash, I dissent.

FOOTNOTES

[1] The elements of the crime of child neglect as charged here are: First, a person responsible for the child's health, safety, or welfare; Second, willfully/maliciously; Third, failed/omitted to protect; Fourth, a child under the age of eighteen from exposure to; Fifth, the use/possession of illegal drugs. Instruction No. 4-37, OUJI-CR (2d).

[2] The Medical Marijuana and Patient Protection Act, 63 O.S.Supp.2019, §§ 427.1, et. seq., specifically Section 427.6(H)(1), provides that a first offense for "intentional and impermissible diversion of medical marijuana. . . by a patient or caregiver to an unauthorized person shall not be punished under a criminal statute but may be subject to a fine of Two Hundred ($200.00)." However, the child neglect statute is the controlling one in that it specifically prohibits exposure of a minor child to illegal drugs. See State v. Franks, 2006 OK CR 31, ¶ 6, 140 P.3d 557, 559 ("specific statutes control [over] general ones").

[3] In Hampton v. State, 2009 OK CR 4, ¶ 18, 203 P.3d 179, 185, we held "the substantial trustworthiness test is a procedure upon which Oklahoma trial judges may rely in deciding when hearsay evidence can be considered over an objection to a probationer's right of confrontation [in a revocation proceeding]." Given the similar lesser burden of proof operative in a preliminary hearing, the substantial trustworthiness test could provide for admission of certain business records without the testimony or certification required by Section 2803(6).

 

 

LEWIS, JUDGE, DISSENTING:

¶1 I respectfully dissent. The State's burden at preliminary examination was to show probable cause that Appellee committed child neglect. Child neglect is the willful or malicious failure or omission by a person responsible for a child's health, safety, or welfare, to protect a child under 18 from exposure to the use, possession, sale, or manufacture of illegal drugs. See 21 O.S.Supp.2019, § 843.5(C) and 21 O.S.Supp.2022, § 843.5(O)(2) (using neglect definition in 10A O.S., § 1-1-105); 10A O.S.Supp.2022, § 1-1-105 (49)(a)(2)(a)(defining "neglect").

¶2 The trial court's decision was assuredly not based on the lack of convincing evidence that Appellee smoked marijuana while pregnant and thus exposed an unborn child to her use of that drug. She admitted it, and the child's postnatal meconium test confirmed the presence of THC. Rather it was the trial court's conclusion that Appellee's exposure of the unborn child to her use of marijuana could not be "illegal" due to her possession of a state-issued medical marijuana license. This was error.

¶3 Oklahoma law prohibits the unlicensed use or possession of marijuana by minors,[1] with an exception for children who obtain a medical license approved by two physicians. 63 O.S.Supp.2017, § 2-402(B)(2); 63 O.S.Supp.2019, § 420(L). Moreover, a medical marijuana license is certainly not a legal authorization to share, transfer, or distribute marijuana to others who have no license, especially those for whom its use or possession is unauthorized by law.

¶4 Appellee is not charged with using marijuana under her state-issued license, which is no crime; but rather with conduct exceeding the bounds of her personal license by exposing an unborn child to marijuana. And until today, who could really doubt that a licensed marijuana consumer would face legal consequences for willfully sharing, distributing, or permitting the unlicensed ingestion of marijuana by children for whose welfare they are responsible?

¶5 The untenable result that follows from the majority's logic is the outright dismissal of a neglect charge based on a mother's uncontested prenatal exposure of her child to marijuana. The majority seems to concede that this result would surprise both the voters who adopted the medical marijuana law and the legislators who have kept the law largely in effect. It certainly surprises me.

¶6 The State must yet convince a jury or trial judge that its evidence warrants a conviction of neglect. But the State is not required at preliminary examination to prove guilt. State v. Heath, 2011 OK CR 5, ¶ 7, 246 P.3d 723, 725. Evidence that coincides with guilt and is inconsistent with innocence is sufficient. State v. Davis, 1991 OK CR 123, ¶ 7, 823 P.2d 367, 369.

¶7 The State presented ample evidence that Appellee exposed her child to marijuana in utero. Appellee's marijuana card did not license this conduct, and the trial court erred by granting the motion to quash. Because neither the People nor the Oklahoma Legislature intended to legalize child neglect in the form of marijuana exposure by their enactment of medical marijuana laws, I respectfully dissent.

FOOTNOTES

[1] An unborn human offspring is a child, and thus a minor child, within the protection of the child neglect statutes. State v. Green, 2020 OK CR 18, ¶ 12, 474 P.3d 886, 891.

 

 

HUDSON, JUDGE, SPECIALLY CONCUR:

¶1 I concur in today's decision. Right or wrong, Aguilar cannot be prosecuted for child neglect for prenatally exposing her infant to marijuana. While there may be circumstances in which a woman's legal use of marijuana while pregnant may amount to child abuse, that is not the case before us today. See 21 O.S.2021, § 843.5(O)(1). Nor is that issue clear given the broad protections provided in the Oklahoma Medical Marijuana and Protection Act. See 63 O.S.Supp.2019, § 427.8(F) ("A medical marijuana patient . . . shall not be subject to arrest, prosecution or penalty in any manner . . . for the medical use of marijuana in accordance with this act."). While the extent of that protection may be unwise, it is not this Court's function to legislate. I thus write specially to stress the need for legislative clarification.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases

 
Cite
Name
Level

 
1991 OK CR 123, 823 P.2d 367, 
STATE v. DAVIS
Discussed

 
1992 OK CR 67, 839 P.2d 667, 
KENNEDY v. STATE
Discussed

 
2006 OK CR 31, 140 P.3d 557, 
STATE v. FRANKS
Discussed

 
2009 OK CR 4, 203 P.3d 179, 
HAMPTON v. STATE
Discussed

 
2011 OK CR 5, 246 P.3d 723, 
STATE v. HEATH
Discussed

 
2012 OK CR 7, 274 P.3d 161, 
NELOMS v. STATE
Discussed

 
2018 OK CR 34, 434 P.3d 5, 
STATE v. BRADLEY; STATE v. BRODIE
Discussed at Length

 
2020 OK CR 18, 474 P.3d 886, 
STATE v. GREEN
Discussed at Length

 
1999 OK CR 14, 989 P.2d 949, 70 OBJ 1076, 
State v. Young
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2803, 
Hearsay Exceptions - Availability of Declarant Immaterial
Cited

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 723, 
Proof of Knowledge of Pregnancy of Victim or Intent to Harm Unborn Child Not Required
Cited

 
21 O.S. 843.5, 
Abuse, Neglect, Exploitation, or Sexual Abuse of Child - Penalties - Definitions
Discussed at Length

 
21 O.S. 701.7, 
Murder in the First Degree
Cited

 
21 O.S. 701.8, 
Second Degree Murder
Cited

 
21 O.S. 711, 
First Degree Manslaughter
Cited

 
21 O.S. 716, 
Second Degree Manslaughter
Cited

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 751, 
Admission of Laboratory Findings - State Bureau of Investigation - Federal Bureau of Investigation - Drug Enforcement Administration
Cited

 
22 O.S. 504.1, 
Motion to Quash for Insufficient Evidence
Cited

 
22 O.S. 1053, 
State or Municipality May Appeal in What Cases
Cited

 
22 O.S. 1089.5, 
Appeal by State of Preliminary Ruling - Standard for Review
Cited

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 2-101, 
Definitions
Discussed

 
63 O.S. 2-402, 
Prohibited Acts B - Penalties
Cited

 
63 O.S. 427.1, 
Short Title
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA